IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID GENE LANCASTER,

       Plaintiff,                    No. CIV S- 08-0051 LKK GGH P

   vs.

TOM L. CAREY, Warden, et al.,

       Defendants.                    <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

<u>Introduction</u>

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment, filed on November 2, 2010, to which plaintiff filed an opposition on December 1, 2010, after which defendants filed a reply, after being granted an extension of time, on December 13, 2010.  Defendants also filed objections to some of plaintiff's exhibits to his opposition, on December 13, 2010, and plaintiff filed his response to the objections, on December 27, 2010.[1]

\\\\\

\\\\\

---

[1] However, plaintiff's separate opposition to the Reply, also filed on December 27, 2010 (docket # 48), will not be considered as not contemplated within the Local Rules or the Federal Rules of Civil Procedure.

1  Plaintiff's Allegations

2              This case, originally filed erroneously as a petition for writ of habeas corpus, on

3  January 9, 2008, proceeds on a complaint, filed on September 2, 2008, only as to plaintiff's

4  claims of retaliation by defendants Carey, Fry and Herrera.  See Order, filed on July 21, 2009.[2]

5  Plaintiff claims that defendants at California State Prison - Solano (CSP-Sol) retaliated against

6  him by placing and keeping him in Administrative Segregation (Ad Seg) for having served as a

7  witness to a sexual misconduct complaint filed by another inmate against a prison staffmember.

8  Complaint, pp. 4-9.  Plaintiff served as a witness for another inmate, Morris CDC # D-13147, at

9  Morris's Rules Violation Report (RVR) hearing, wherein Inmate Morris maintained that he only

10 received a write-up by D. Hickison[3] because Morris had indicated that he would be filing a 602

11 staff complaint on Hickison.  Id., at 4.  Plaintiff testified in support of Inmate Morris and

12 indicated that Hickison had sexually harassed him (plaintiff), stating "she rubbed the back of my

13 arms and asked me how I was."  Id., at 5, Exhibit (Ex.) B (partial copy of June 20, 2005 RVR

14 including plaintiff's testimony), p. 16.[4]  On June 20, 2005, the evening of the date of the hearing,

15 plaintiff and Morris were placed in Ad Seg.  Id., Ex. C (somewhat illegible copy of June 20, 2005

16 Ad Seg placement reasons), p. 19.[5]  Although no charges were filed against him, plaintiff was

17 told, in part, that he was being placed in Ad Seg by defendants Fry and Herrera for having made

18

19        [2] Judge King therein dismissed several other defendants as well as any claim for a
   violation of plaintiff's due process or equal protection rights.  (This case was reassigned from
20 Senior District Judge Lawrence K. Karlton and the undersigned, on Nov. 24, 2008 (docket # 10),
   to Chief Judge Helen W. Gillmore; on Jan. 5, 2008 (docket # 11), Judge Gillmore reassigned the
21 case to Senior District Judge Samuel P. King, and, thereafter, in anticipation of Judge King's
   pending retirement (docket # 25), the action was ultimately reassigned again to Judge Karlton
22 and the undersigned, on April 5, 2011).

23        [3] Although this name is variously spelled as "Hickinson" and "Hickerson," as well as
   "Hickison," in filings, it appears from the court's review of the record that "Hickison" is the
24 correct spelling.

25        [4] The court references the electronic pagination of plaintiff's complaint at docket # 9.

26        [5] A clearer copy is located at docket # 40-1, p. 126.

allegations of staff misconduct for which he was "deemed a threat to the safety and security of

this institution."  Id.  On August 12, 2005, defendant Fry further retaliated against plaintiff by

placing a negative 128-B chrono in his C-file with no charges against plaintiff, which had a

negative impact at his parole consideration hearing.  Id., at 6 & 8, Ex. D (copy of chrono)[6], p. 22

& Ex. G (one page of what appears to be an April 4, 2006 parole hearing decision for plaintiff),[7]

p. 31.  Plaintiff alleges that defendant Carey knew of the alleged retaliation/harassment by his

staff because Inmate Morris's brother, Randy Morris, had written letters expressing concern

about the safety of his brother and plaintiff.  Id., at 6, Ex. E (copy of undated letter addressed to

Warden Carey evidently from Randy Morris),[8] p. 24 & Ex. F (copy of undated letter, apparently

from Randy Morris, addressed to Gloria Romero at the state capitol).

---

[6] "You were initially placed in the Administrative Segregation Unit on 6/20/05 after you made allegations of staff misconduct by with [sic] your work supervisor, Ms. Hickison. Specifically, you confirmed another inmate's claim that she had attempted to coerce an over-familiar relationship with inmates.  The investigation confirmed that all of the allegations were complete fabrications.  Your actions negatively affected an employee's work assignment and the institution's ability to provide routine services to the inmate population by that unit.  If successful, your false allegations could have resulted in the employee's termination of employment.
    A thorough review of all of the documentation revealed that there was insufficient information to support a finding of guilt in a disciplinary hearing, therefore no charges will be filed against you.  However, the information is sufficiently credible to demonstrate your willingness to significantly jeopardize Ms. Hickison's welfare.  Ms. Hickison has appropriately continued to work in her assignment in the Level II Clothing Distribution and your release to the general population at CSP-Solano would necessitate your contact with her.  For this reason, your release to the general population at CSP-Solano poses a danger to the safety and welfare of an employee.  You were retained in the ASU at MAXIMUM custody statue, until your transfer to an alternate institution."

[7] "[W]hat really troubled the Board was the fact of your 128B that you received for that false allegation.  It's very troublesome to us.  Despite you not getting a 115 for it, your willingness to significantly jeopardize the welfare of a staff member to the point that you had to be transferred out of the institution is something that I think you need to take into consideration. To falsely accuse somebody.  There was nothing in the chrono that substantiated that. And when you make an allegation , you should make sure that you have all the facts before you just agree to do something with somebody, especially when it comes to a staff member."

[8] The letter references an earlier letter of his sent to Carey "expressing my concern over the situation of my brother Robert Morris and his cell mate David Lancaster," to which he has had no response, stating he therefore intends to write "the Governor, and Senators Speier and Romero."

1   As relief, plaintiff seeks, inter alia, injunctive relief in the form of expungement of

2   the negative 128-B chrono from his prison C-file, and money damages, including punitive.

3   Complaint, pp. 3, 10.

4   Motion for Summary Judgment

5   Defendants move for summary judgment, pursuant to Fed. R. Civ. P. 56, on the

6   grounds that 1) plaintiff's retaliation claim fails because there was a legitimate correctional goal

7   for his placement in Administrative Segregation (Ad Seg); and 2) defendants are entitled to

8   qualified immunity because they did not violate plaintiff's constitutional rights and their conduct

9   was reasonable in light of established law.  Notice of Motion for Summary Judgment[9], p. 1.

10   *Summary Judgment Standards under Rule 56*

11   Summary judgment is appropriate when it is demonstrated that there exists "no

12   genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

13   law."  Fed. R. Civ. P. 56(c).

14   Under summary judgment practice, the moving party

15   always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the
16   pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes
17   demonstrate the absence of a genuine issue of material fact.

18   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

19   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

20   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

21   depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

22   should be entered, after adequate time for discovery and upon motion, against a party who fails to

23   make a showing sufficient to establish the existence of an element essential to that party's case,

24   and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

25

26   [9] Hereafter, reference to the acronym "MSJ" will signify the Memorandum of Points and Authorities in Support of Motion for Summary Judgment.

1   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

2   necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment

3   should be granted, "so long as whatever is before the district court demonstrates that the standard

4   for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

5   2553.

6          If the moving party meets its initial responsibility, the burden then shifts to the

7   opposing party to establish that a genuine issue as to any material fact actually does exist. See

8   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

9   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

10  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

11  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

12  contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

13  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

14  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

15  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

16  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

17  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

18  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

19         In the endeavor to establish the existence of a factual dispute, the opposing party

20  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

23  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

24  genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

25  56(e) advisory committee's note on 1963 amendments).

26  \\\\

1    In resolving the summary judgment motion, the court examines the pleadings,

2  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

4  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

5  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

6  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

7  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

8  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

9  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

10  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

11  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

13    On August 28, 2009, the court advised plaintiff of the requirements for opposing a

14  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

15  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

16  1988).  The above advice would, however, seem to be unnecessary as the Ninth Circuit has held

17  that procedural requirements applied to ordinary litigants at summary judgment do not apply to

18  prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the district courts

19  were cautioned to "construe liberally motion papers and pleadings filed by *pro se* inmates and ...

20  avoid applying summary judgment rules strictly."  Id. at 1150.  No example or further definition

21  of "liberal" construction or "too strict" application of rules was given in Ponder suggesting that

22  any jurist would know inherently when to dispense with the wording of rules.  Since the

23  application of any rule which results in adverse consequences to the pro se inmate could always

24  be construed in hindsight as not liberal enough a construction, or too strict an application, it

25  appears that only the essentials of summary judgment, i.e., declarations or testimony under oath,

26  and presentation of evidence not grossly at odds with rules of evidence, apply to the pro se

1    plaintiff.

2        *Undisputed Material Facts*

3        The following of defendants' undisputed material facts[10] are expressly undisputed

4    by plaintiff under penalty of perjury (with any caveat noted):[11]   DUF #1.   Plaintiff is a prisoner

5    within the custody of the California Department of Corrections and Rehabilitation (CDCR).

6    DUF # 2.   In 2005, plaintiff was housed at California State Prison - Solano (CSP-Sol) in

7    Vacaville, CA, until his transfer to Correctional Training Facility (CTF), on September 21, 2005.

8    DUF # 3.   Plaintiff was assigned a job in laundry distribution at CSP-Sol.   DUFs # 4 & 5.   At all

9    times relevant to this action, defendant Carey, who is now retired from CDCR, was the warden at

10   CSP-Sol.   DUFs # 6 & # 7.   At all relevant times, defendant Herrera was a correctional lieutenant

11   and defendant Fry was a facility captain at CSP-Sol.

12        DUF #8.   Plaintiff testified as a witness at a 115 Rules Violation Report hearing

13   for Inmate Morris.   DUF # 9.   At the hearing, plaintiff testified that D. Hickison, a CSP-Sol staff

14   member, had sexually harassed plaintiff by rubbing the back of plaintiff's arms and asking him

15   how he was doing.   DUF # 13.   Plaintiff was in Ad Seg until he was transferred to CTF-Soledad,

16   at which time he was released from Ad Seg and restored to normal program and work group

17   privilege status.   DUF # 15.   Defendant Fry, as facility captain, directed that plaintiff be placed in

18   Ad Seg to protect the integrity of the investigation into his allegations of staff misconduct, in

19   \\\\

20   \\\\

21   \\\\

22   \\\\

23   _____

24   [10] MSJ, defendants' Statement of Undisputed Facts in Support of Motion for Summary
     Judgment (MSJ, DUF).

25   [11] See plaintiff's Separate Statement of Undisputed and Disputed Facts in Opposition to
     defendants' Motion for Summary Judgment (Opp., PSUDF), filed on December 1, 2010 (docket
26   # 43-1).

accordance with Cal. Code Regs. tit.xv, § 3335(a).[12][13] DUF # 24. Defendant Fry met with plaintiff several times following June 20, 2005, while plaintiff was in Ad Seg and each time informed him that he was being kept in Ad Seg to protect the integrity of the investigation.[14]  DUF # 25. Plaintiff never spoke to defendant Warden Carey personally about his placement in Ad Seg. DUF # 26.  Defendant Carey had no personal involvement with the facts of this case, other than possibly receiving a letter from Inmate Morris's brother. DUF # 28.  Warden Carey would not have been involved in a routine decision to place an inmate in Ad Seg. DUF # 29.  Defendants Herrera, Fry, and Carey were not involved in the 115 Rule Violation Report hearing involving Inmate Morris on June 20, 2005.  DUF # 30.  The investigation into plaintiff's allegations of staff misconduct did not substantiate the allegations.  DUF # 31.  On August 12, 2005, defendant Fry authored a 128-B chrono on plaintiff regarding his placement in Ad Seg.  DUF # 32.  Plaintiff was transferred to CTF on September 21, 2005.  DUF # 33.  Upon his transfer to CTF, plaintiff was released from Ad Seg and returned to general population.  DUF # 34.  Plaintiff is not seeking a transfer as injunctive relief in this action.

\\\\

---

[12] Plaintiff does not dispute this statement but adds a caveat, without pointing to any supporting affidavit or other evidence, that he was not placed in Ad Seg until ten hours later. Opp., PSUDF, dkt. # 43-1, p. 2.

[13] Cal. Code Regs. tit.xv, § 3335(a): "When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation. Administrative segregation may be accomplished by confinement in a designated segregation unit or, in an emergency, to any single cell unit capable of providing secure segregation."

[14] Although plaintiff asserts that he "does not dispute in part" DUF # 24, he asserts that defendant Fry is not thereby absolved of "her retaliation," and that she knew of Cal. Code Regs. tit.xv, § 3401.5(f).  Cal. Code Regs. tit.xv, § 3401.5(f) under the heading "Retaliation Against Inmates/Parolees" states: " Retaliatory measures against inmates/parolees who report incidents of sexual misconduct shall not be tolerated and shall result in disciplinary action and/or criminal prosecution.  Such retaliatory measures include, but are not limited to, coercion, threats of punishment, or any other activities intended to discourage or prevent an inmate/parolee from reporting sexual misconduct."

1    *Defendants' Evidentiary Objections*

2         As noted above, the Ninth Circuit has admonished district courts to construe

3    liberally pleadings by pro se inmates and to avoid strict application of the summary judgment

4    rules to their filings.  Thomas v. Ponder, 611 F.3d at 1150.  Moreover, the Ninth Circuit has

5    observed that "[a]t the summary judgment stage, we do not focus on the admissibility of the

6    evidence's form.  We instead focus on the admissibility of its contents."  Fraser v. Goodale, 342

7    F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be

8    considered on summary judgment); see also Aholelei v. Hawaii Dept.of Public Safety, 220 Fed.

9    Appx. 670 *1 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's

10   evidence at summary judgment, "which consisted primarily of litigation and administrative

11   documents involving another prison and letters from other prisoners" which evidence could be

12   made admissible at trial through the other inmates' testimony at trial).[15]

13        Thus, the question is whether or not the objected-to evidence could be made

14   admissible at trial in one form or another.  Defendants object to plaintiff's evidence within the

15   declaration of Randy Morris (Opp., dkt. # 43, Randy Morris Declaration, p. 23, ¶ 3) that "[o]n or

16   about July or August 2005, Lancaster sent letters to me expressing his concern over the situation

17   at Solano about my brother Robert Morris, and himself."  Defendants' Objections, Dkt. # 46, pp.

18   1-2.  Defendants object on the ground of relevance under Fed. R. Evid. 401,[16] contending that

19   this paragraph is not likely to make more or less probable the existence of any fact of

20   consequence to the determination of this action due to its vagueness with reference to the

21

22        [15] The Ninth Circuit now permits citation to unpublished cases.  Ninth Circuit Rule 36-3,
     in accordance with Fed. R. App. P. 32.1, permits citation to unpublished dispositions and orders
23   issued on or after January 1, 2007.  However, such rulings "are not precedent, except when
     relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."
24   Ninth Circuit Rule 36-3(a).

25        [16] "'Relevant evidence' means evidence having any tendency to make the existence of any
     fact that is of consequence to the determination of the action more probable or less probable than
26   it would be without the evidence."

1   "situation at Solano" and failure to state a time period for the events.  Id.  As to the substance,

2   defendants object that the evidence is hearsay[17] and also cite the "best evidence" rule.[18]  Plaintiff

3   contends that a time frame is sufficiently stated with regard to his claim of retaliation by

4   reference to July or August of 2005, that the letter Randy Morris sent (or a copy of it) is

5   contained in Exs. E and F to the complaint, that Randy Morris, who is not a prisoner, has nothing

6   to gain by submitting a falsified declaration.  Plaintiff's response to objections, dkt. # 49, p. 2.

7   Reference to the complaint shows that plaintiff has included what appear to be copies of two

8   letters from Randy Morris.  Dkt. # 9, pp. 24, 26.  The first, addressed to defendant Carey,

9   references an earlier letter Randy Morris had sent to Warden Carey, regarding "the situation" of

10  his (Morris') brother and of plaintiff to which he has gotten no response, and speaks of having

11  sent letters to officials such as the Governor, stating that with them he has enclosed a letter from

12  plaintiff describing the inhumane treatment plaintiff and Inmate Robert Morris are receiving, as

13  well as a copy of his brother's appeal form.  Id. at 24.  The second letter is a copy of a letter

14  directed to Gloria Romero at the state capitol regarding Randy Morris' concern that his brother

15  and plaintiff "are being unduly punished for the crime of reporting the misconduct of Supervisor

16  D. Hickerson [sic]."  Id., at 26.  Defendants also object to the portions of Randy Morris's

17  declaration wherein he references the concerns he says were conveyed to him in a letter from

18  plaintiff about the retaliation of the administration against him and Morris's brother; to Randy

19  Morris's statement that he had called and written letters to the warden's office; to Randy

20  Morris's reference to having sent plaintiff copies of the letters he wrote to Carey, Romero and

21

22  _____

23      [17] Under Fed. R. Evid. 801(c), "'[h]earsay' is a statement, other than one made by the
    declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the
    matter asserted."

24      [18] "The best evidence rule embodied in Rules 1001-1008....requires not, as its common
    name implies, the best evidence in every case but rather the production of an original document
25  instead of a copy."  Seiler v. Lucasfilm Ltd., 808 F.2d 1316, 1318 (9th Cir. 1986); accord, United
    States v. Diaz-Lopez, 625 F.3d 1198, 1201 (9th Cir. 2010)(quoting Seiler, id., and citing Fed. R.
26  Evid. 1002).

1   State Senator Speier.  Objections, dkt. # 46, pp. 2-3.  Plaintiff claims he intends to subpoena

2   telephone records for trial.  As noted, he included a copy of a letter from Randy Morris addressed

3   to Romero with his complaint.

4            Defendants also object to significant portions of plaintiff's own declaration,

5   among them the statements wherein plaintiff avers that no facts between Jan. 2005 through

6   August 12, 2005, support defendants' Fry's and Herrera's decision to place plaintiff in Ad Seg on

7   June 20, 2005; that at the June 20, 2005, CDC 115 hearing, the finding that plaintiff was not

8   guilty established that D. Hickison's allegations against Inmate Morris in the CDC 115 RVR

9   report were false; that when asked by defendant Herrera if plaintiff and Morris were going to

10  pursue the complaint against Hickison, Inmate Morris and plaintiff confirmed that they were

11  resulting in defendant Herrera's statement that "by order of Cpt. Fry," inmate Morris and plaintiff

12  were being placed in Ad Seg.  Objections, dkt. # 46, pp. 3-6, citing plaintiff's declaration.

13  Defendants are correct that plaintiff's legal conclusions are not proper but plaintiff could testify

14  as what defendants told him and his response to them.  Objections based on improper legal

15  conclusions are sustained but defendants' hearsay and double hearsay objections are overruled.

16  Although defendants are also correct that a statement by plaintiff that Randy Morris informed

17  defendant Carey in a letter about the retaliation being conducted against plaintiff and Morris's

18  brother is speculative and not based on personal knowledge, Randy Morris could testify that he

19  sent such a letter.  On the other hand, Randy Morris's actions were predicated on the claims

20  made by his brother and plaintiff and arguably are not relevant to show that plaintiff and Inmate

21  Morris were placed in Ad Seg as a form of retaliation, but only that plaintiff brought such claims

22  to Randy Morris' attention.  The court will not consider plaintiff's opinions or improperly

23  supported conclusions; nevertheless, some material set forth could be produced by way of

24  testimony or supported by further exhibits.

25  \\\\

26  \\\\

1  *Facts in Dispute*

2  DUF # 10.  Following the hearing, plaintiff was called to the custody complex to

3  be interviewed.  MSJ, Declaration of Deputy Attorney General David Brice, Ex. A, plaintiff's

4  deposition (Dep.) at p. 13:4-12.[19]  Plaintiff cites his own declaration in opposition (Opp.(dkt.#

5  43), plaintiff's Dec. ¶¶ 8-9), but there does not appear to be any dispute by plaintiff's own

6  representation that he was called to the custody complex after the hearing, with the one caveat

7  being that defendants do not mention that plaintiff states that he first went to dinner after the

8  hearing before he and Inmate Morris were called to the custody complex.  DUF # 11.  Plaintiff

9  was told that he would be placed in Ad Seg during the investigation of plaintiff's complaint of

10  sexual harassment by a staff member.  MSJ, Brice Dec., Ex. A, plaintiff's Dep. at pp.

11  15:13-16:14.  In opposition to DUF # 11, plaintiff avers that defendant Herrera asked Inmate

12  Morris and plaintiff if they were going to pursue Morris's complaint against Hickison, to which

13  Morris responded that he was, after which defendant Herrera then said he was placing them in

14  Ad Seg as ordered by defendant Fry.  Opp., plaintiff's Dec. ¶ 9.  This confirms plaintiff's

15  testimony in his deposition (in a portion not relied on by defendants) after Morris and plaintiff

16  had been called back to the custody complex:

17          And he [Herrera] asked us - - or asked Inmate Morris if he was
           going to drop the 602 and the complaint.  And he stated no.  He
18          asked me the same question, and I stated no.  He goes, "Well, you
           know, under the direct order from the captain, then we're placing
19          both of you in ad seg."

20  Plaintiff's Dep., 13:12-17.

21          Within the portion defendants do cite, however, the following exchange also

22  occurred:

23

24          Q.  When you were talking to Lieutenant Herrera, did he tell you
           the reason you were going to ad seg?

25

26          [19] The undersigned references the court's electronic pagination.

12

A.  Yeah.  He told us that he - - during the investigation, said we're going to be put in - - placed in ad seg.

Q.  During the investigation of what?

A.  Of - - of - - of the staff complaint.

Q.  That was the sexual harassment complaint?

A.  That would be the sexual harassment complaint Robert Morris filed and - - and my testimony when I went to the 115.

Q.  And why were you included with it?  Was it because your testimony supported the complaint?

A.  My testimony supported the complaint.

Q.  Did he give you any elaboration as to why - - why you need to go to ad seg because of the investigation?

A.  Well, they wanted - - "we're putting you in the ad seg because you're a threat to the integrity of the - - of the investigation. You're - - you're a threat to the security of the institution" or "you're a threat to the public" - - the safety of the individual that - - that they're investigating; so they try to separate you from the main population.

Q.  And so it was your belief that was Herrera's reason for putting you in ad seg on June 20, 2005?

A.  Yes.  There's no other reason.

MSJ, plaintiff's Dep., 15:13-16:14.  Thus, it appears that this fact is essentially not in dispute.

DUF # 12.  Defendant Herrera placed plaintiff in Ad Seg to protect the integrity of the investigation into his staff complaint because his presence in the general population could jeopardize the integrity of the investigation. MSJ, Brice Dec., Ex. A, plaintiff's Dec. at p. 16:2-14.  Plaintiff essentially appears to corroborate this in the testimony cited immediately above.  Defendant Herrera under oath in his declaration states "In order to protect the integrity of the investigation into the allegations of serious staff misconduct that Lancaster [plaintiff] had made, I placed him in Ad Seg pending the outcome of the investigation."  MSJ, Herrera Dec., ¶ 5.  Plaintiff's only support in dispute in his separate statement is the following: "Herrera's actions are subject to review for retaliation."  Opp., PSUDF, dkt. # 43-1, p. 2.

13

1    DUF # 14.  Plaintiff had no further contact with defendant Herrera after June 20,

2  2005.  In support of this statement, defendants cite plaintiff's testimony that he did not speak to

3  defendant Herrera after June 20, 2005.  MSJ, Brice Dec., Ex. A, plaintiff's Dep., at pp.

4  23:24-24:1 and defendant Herrera's Dec. at ¶ 12, wherein he states that he has no recollection of

5  having had any further contact with plaintiff after that date.  In opposition, plaintiff cites his

6  memorandum of points and authorities at page 3, which is not particularly helpful to him on this

7  point.  However, within his deposition, the court notes the following exchange:

8         A.  Lieutenant Herrera interviewed me along with Inmate Morris
          on the same day that Inmate Morris was not found guilty of his
9         115.  And when I went in there and talked to Lieutenant Herrera,
          he point blank asked me if I was going to file or go along with
10        Inmate Morris's complaint, and I stated yes.  And then he took it
          upon himself there and then, because I said yes, but the Captain's
11        order, Captain Fry, "We're going to place you in ad seg."  He has
          the ability to go and say, "No, this is wrong," according to Title 15,
12        section 3433.5[20] states there will be no retaliation against any
          inmate or employee for alleging staff misconduct.  That's - -
13
          Q.  Now- -
14
          A.  Go ahead.
15
          Q.  No, I'm sorry, I didn't mean to interrupt you.  Did he also say,
16        and I believe you testified that he wanted to put you into ad seg to
          protect the integrity of the investigation?
17
          A.  That's - - the - - the information was already pre-written out on
18        a CDC form 1 - - 114 lock-up order.

19        Q.  But he said that also, right?  Didn't you testify to that?

20        A.  Well - - yes, he did say that.

21  Plaintiff's Dep., 22:2-24.

22        Plaintiff attempts to draw a direct correlation between his not agreeing to

23  withdraw his testimony in support of Inmate Morris and a subsequent vindictive or retaliatory

24  _____

25     [20] This reference is apparently an error as there is no CAL. CODE REGS. tit.xv, § § 3433.5 and
    § 3433 refers to employee vacations.  Plaintiff evidently intended to refer to  CAL. CODE REGS.
26  tit.xv, § 3401.5(f), the substance of which is contained in footnote 14.

placement in Ad Seg.  However, defendants' representation that he was placed in Ad Seg pursuant to a prison regulation (see footnote 13) during the conduct of an investigation into his and Inmate Morris's claims of sexual misconduct by a prison staff member is not belied thereby because, obviously, had plaintiff and/or Inmate Morris agreed not to pursue the staff complaint, there would have been no need, in accordance with the regulation, for their placement in Ad Seg to conduct the investigation.

DUF # 16.  Removing the inmate from the general population protects the inmate's safety, as he could be subject to reprisals from staff or other prisoners as a result of his allegations.  MSJ, defendant Fry Dec.¶ 9; defendant Herrera Dec. ¶ 7.  Plaintiff does not counter these defendants' sworn declarations with reference to specific supporting affidavits or exhibits in his PSUDF (dkt. # 43-1), but simply asserts that defendant Fry's decision was retaliatory.

DUF # 17.  Removing the inmate to Ad-Seg also protects the accused staff member from reprisals or attacks by the inmate or other inmates.  MSJ, Fry Dec. ¶ 10; Herrera Dec. ¶ 8.  Plaintiff states that he was falsely deemed to be a threat and that his presence in general population for ten hours, presumably prior to his placement in Ad Seg, proves this.  Plaintiff points to his opposition for support once again without identifying the specific supporting evidence.

DUF # 18.  It is especially important to remove an inmate from the general population pending an investigation of allegations of sexual harassment because there is little in the way of physical evidence and the investigation will rely on witness testimony.   MSJ, Fry Dec. ¶ 20.  Plaintiff counters with the bare assertion that defendants Fry and Herrera falsely determined plaintiff to be a danger.  PSUDF (dkt. # 43-1), p. 2.

DUF # 19.  The goal in placing an inmate in Ad Seg is to have a reliable investigation of the allegations, without the possibility of outside influences on witness testimony.  MSJ, Fry Dec. ¶ 11.  Plaintiff disputes this by making an assertion that the free staff was still able to work around an inmate in the laundry who was a witness.  PSUDF, p. 2.

1   Plaintiff does not explain to what this unnamed individual was a witness and does not reference

2   any affidavit in support of this assertion.  This statement is too vague and insufficiently

3   supported to actually counter defendant Fry's sworn statement.

4           DUF # 20.  It is important to know if the accused staff person is guilty, so that

5   appropriate action can be taken.  MSJ, Fry Dec. ¶ 12.  Plaintiff attempts to dispute this statement

6   by reference to defendant Fry's response to a specific request for admission, # 20.[21]  In that

7   request, plaintiff states: "Admit that there is a procedure not to retaliate on inmate who report

8   incidents of sexual misconduct."  To which defendant Fry's response, after positing an objection

9   on grounds of vagueness, was: "Defendant admits that Title 15 California Code of Regulations §

10  3401.5 – Employee Sexual Misconduct, subsection (f), prohibits retaliatory measures against

11  inmates/parolees who report incidents of sexual misconduct, otherwise denied."  Dkt. # 40-1, p.

12  83.  The undersigned is at a loss to see how this contradicts, or even applies to, defendant Fry's

13  declaration cited at DUF # 20.

14           DUF # 21.  In order to determine if a staff person is guilty of an alleged

15  complaint, there must be an unbiased and thorough investigation, without the appearance of

16  impropriety.  MSJ, Fry Dec. ¶ 13.  Plaintiff disputes this with another assertion that defendants

17  acted in retaliation.  Opp., PSUDF, p. 2.

18           DUF # 22.  Sexual harassment allegations, if proven, are serious enough to

19  threaten an employee's continued employment with CDCR. MSJ, Fry Dec. ¶ 14.  DUF #  23.  A

20  complaint of serious staff misconduct, like sexual harassment, must be investigated because the

21  safety and security of the institution could be compromised if the complaint was true and no

22  corrective action was taken.  MSJ, Fry Dec. ¶ 15.  Plaintiff references his response to DUF # 19

23  as his counter to DUF # 22 and # 23.  Opp., PSUDF, p. 2. DUF # 27.  Defendant Warden Carey

24

25          [21] The court observes that plaintiff has not made finding this exhibit simple.  Plaintiff
    submitted a number of exhibits on November 4, 2010 at docket # 40, prior to filing his December
26  1, 2010, opposition at docket # 43.  The requests for admission referenced were not located with
    the opposition but with the exhibits at docket # 40.

1   has no recollection of receiving a letter from Inmate Morris's brother.  MSJ, Carey Dec. ¶ 6.

2   Plaintiff attempts to counter this statement with a contention that defendant Carey should have

3   known about incoming mail addressed to him (PSDUF, p. 2); of course, even if that is so, it does

4   not undermine defendant Carey's statement that he has no recollection of such correspondence.

5   *Retaliation*

6           The Ninth Circuit treats the right to file a prison grievance as a constitutionally

7   protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997); see also Hines

8   v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance

9   procedure is a constitutionally protected right, cited with approval in Bradley v. Hall, 64 F.3d

10  1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir. 1996) (retaliation for

11  pursuing a grievance violates the right to petition government for redress of grievances as

12  guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d 677, 679-80

13  (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing

14  prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary

15  actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854 F.2d 584, 589

16  (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is

17  precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation

18  omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for

19  complaint about food actionable).

20          Within the prison context, a viable claim of First Amendment
            retaliation entails five basic elements: (1) An assertion that a state
21          actor took some adverse action against an inmate (2) because of (3)
            that prisoner's protected conduct, and that such action (4) chilled
22          the inmate's exercise of his First Amendment rights,[] and (5) the
            action did not reasonably advance a legitimate correctional goal.

23

24  Rhodes v. Robinson, 408 F.3d 559, 567-568 (9th Cir. 2005).[22]

25  _____

26      [22]  MSJ,p. 4.

1    In other words, in order to state a retaliation claim, a plaintiff must plead facts

2 which suggest that retaliation for the exercise of protected conduct was the "substantial" or

3 "motivating" factor behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874

4 F.2d 1310, 1314 (9th Cir. 1989).  The plaintiff must also plead facts which suggest an absence of

5 legitimate correctional goals for the conduct he contends was retaliatory.  Pratt v. Rowland, 65

6 F.3d 802, 806 (9th Cir. 1995) (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).  Mere

7 conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts

8 showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier v.

9 Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

10    *Discussion*

11    What is essentially in dispute is whether or not defendants had a legitimate, not

12 pretextual, correctional goal, in placing and keeping plaintiff in Ad Seg on June 20, 2005, until

13 his transfer to another facility, CTF Soledad, on September 21, 2005, some three months later,

14 whereupon he was returned to general population.

15    What is somewhat troubling is that while defendant Fry maintains in her chrono

16 that there was no justification for the plaintiff's allegations of sexual misconduct by D. Hickison,

17 even the Board of Parole Hearings appeared to note that no specific basis for a conclusion that

18 the allegations were wholly false was referenced.  On the other hand, plaintiff does not really take

19 issue with the findings of the investigation but simply maintains that he (along with Inmate

20 Morris) was maintained in Ad Seg as a form of retaliation.  Plaintiff relies on CAL. CODE REGS.

21 tit.xv, § 3401.5(f), which, as noted earlier, states:

22    Retaliatory measures against inmates/parolees who report incidents
     of sexual misconduct shall not be tolerated and shall result in
23    disciplinary action and/or criminal prosecution.  Such retaliatory
     measures include, but are not limited to, coercion, threats of
24    punishment, or any other activities intended to discourage or
     prevent an inmate/parolee from reporting sexual misconduct.

25 \\\\

26 \\\\

18

1          Defendants contend that plaintiff will never be able to meet his burden to show

2   that his placement in Ad Seg following his allegations of sexual misconduct or harassment by a

3   prison staff member (not a party) because he cannot show the absence of a legitimate correctional

4   goal in the placement, citing the declarations of both defendants Herrera and Fry and plaintiff's

5   own deposition testimony.  MSJ, p. 4.  Defendants argue that placing plaintiff in Ad Seg had the

6   function of protecting the integrity of the investigation by allowing for an unbiased investigation

7   of the serious sexual harassment allegations without plaintiff having the opportunity to influence

8   witnesses.  Id.  They also contend that his removal also guaranteed the safety of both plaintiff and

9   the staff member under investigation, which is directly related to the safety and security of the

10  institution.  Id.  Defendants, as also noted previously, cite a separate prison regulation from that

11  of the plaintiff, CAL. CODE REGS. tit.xv, § 3335(a):

12              When an inmate's presence in an institution's general inmate
                population presents an immediate threat to the safety of the inmate
13              or others, endangers institution security or jeopardizes the integrity
                of an investigation of an alleged serious misconduct or criminal
14              activity, the inmate shall be immediately removed from general
                population and be placed in administrative segregation.
15              Administrative segregation may be accomplished by confinement
                in a designated segregation unit or, in an emergency, to any single
16              cell unit capable of providing secure segregation.

17          Plaintiff argues adamantly that the defendants are not entitled to summary

18  judgment because their representation of legitimacy in placing him in Ad Seg "is a sham and a

19  fraud perpetrated on the court."  Opp., p. 3.  He contends that it is a lie that he was removed for

20  his own safety and the safety of the staff person.  Id. at 4.  He states that the RVR hearing for

21  Inmate Morris, at which plaintiff testified concerning Hickison's alleged misconduct occurred in

22  the morning of June 20, 2005, and that he afterward returned to his laundry job, along with other

23  inmates, and it was not until 2035 hours, some ten hours later, that he was placed in Ad Seg.  Id.

24  Plaintiff does not include this contention in his declaration under penalty of perjury.  He does

25  state in his deposition:

26  \\\\

1    After the hearing, I went to - - I went to dinner on the same day,
     June 20, 2005.  After dinner, I went back to my building, Building
2    13.  Approximately about six o'clock, Inmate Morris and I was
     called back to the custody complex, where I was interviewed with -
3    - interviewed by Lieutenant Herrera in his office along with Inmate
     Morris.

4

5    Plaintiff's Dep.: 13:6-12.

6            Plaintiff appears to believe that a lapse of time between the end of the hearing

7    (whether plaintiff then went to his laundry job or dinner or both) and his Ad Seg placement was

8    purely retaliatory, coupled with the Ad Seg placement having been immediately preceded by his

9    refusal to withdraw his allegations against staff member Hickison after being asked if he would

10   do so by defendant Herrera.  Id. at 4-5.  He argues that defendants' use of a prison regulation to

11   place him in Ad Seg was a malicious abuse of authority when he had exercised his right to testify

12   at an RVR 115 hearing regarding staff misconduct.  Id. at 5-6.  He argues that both the Ad Seg

13   placement and the transfer were retaliatory and will have an adverse effect on his future parole

14   consideration hearings.  Id. at 6.

15           In reply, defendants re-emphasize that notwithstanding plaintiff's

16   reliance on Cal. Code Regs. tit.xv, § 3401.5(f), plaintiff can never prove that his placement in Ad

17   Seg constituted retaliation in light of § 3335(a) and the need to protect the integrity of the

18   investigation into the sexual misconduct allegations.  Reply, p. 2.  Defendants also note that

19   plaintiff does not actually challenge the requirements of § 3335(a) or argue that the regulation

20   was not applicable to him.  Id. at 3.

21           A fact dispute remains as to whether or not plaintiff's Ad Seg placement was

22   retaliatory, notwithstanding defendants' argument for its legitimacy, at least as to defendants

23   Herrera and Fry.[23]  This dispute implicates a genuine issue of fact that the court on this motion

24

25   _____
     [23] This court is aware that the question of whether defendants Herrera and Fry were
     entitled to summary judgment was resolved differently in Morris v. Hicki[]son, CIV-S-06-2936
26   LKK KJN P, a case wherein Inmate Morris proceeded as plaintiff in his own action with regard
     to the RVR in which the instant plaintiff offered testimony against, inter alia, these individuals

1   for summary judgment is unable to resolve.  Dominguez-Curry v. Nevada Transp. Dept., 424

2   F.3d 1027, 1036 (9th Cir.  2005) ("[I]t is axiomatic that disputes about material facts and

3   credibility determinations must be resolved at trial, not on summary judgment.") [Internal

4   citation omitted].  Although it is undisputed that the investigation did not substantiate plaintiff's

5   allegations regarding Dickison, defendants cannot resolve this issue by their motion for summary

6   judgment, in part because simply stating in conclusory fashion by way of a chrono that there was

7   no basis to plaintiff's allegations against Dickison, and that they were false, does not demonstrate

8   conclusively that that is in fact the case.  *Ipse dixit* is not evidence.  Nor is the mere issuance of a

9   chrono or other administrative order subject to *res judicata* effect.  In a case such as this,

10  circumstantial evidence is important and certainly stands on an equal footing with direct

11  evidence.  Here, viewing the facts most favorably for plaintiff, and drawing inferences for him,

12  plaintiff was placed into administrative segregation when he made it known that he would not

13  comply with a request to withdraw his testimony in favor of his inmate friend involved in

14  disciplinary charges, i.e., he would further participate in pursuing an inmate complaint.  If this is

15  not potential retaliation for exercise of a constitutional right, nothing could be.  See Brodheim v.

16  Cry, 584 F.3d 1262 (9th Cir. 2009) (even allowing a retaliation claim to proceed when a

17  grievance decider made an implicit threat of retaliation regarding use of the grievance process).

18  The undersigned is, of course, not holding that false testimony by an inmate can insulate that

19  inmate from punishment in prison, or that plaintiff's testimony was, in fact, truthful.  The

20  undersigned is finding that the truth or falsity of the testimony is a disputed fact, which has not

21  been established for the purposes of this litigation, and the final determination must await trial.

22  \\\\

23

---

24  and of which the undersigned takes judicial notice.  (Judicial notice may be taken of court
    records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645

25  F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981)).  In the circumstances, however, for the
    reasons set forth above, this undersigned does not believe the issue raised by plaintiff can be

26  resolved as to defendants Herrera and Fry in this motion for summary judgment.

1          Nor could the undersigned support a rule that the mere articulation of a legitimate

2   penological interest, here the alleged need to investigate testimony while the inmate is sent off to

3   segregation (for a long time until transfer), as a matter of law insulates a prison official from any

4   and all retaliation lawsuits.  If this were so, the "investigation interest," would trump § 1983 even

5   in those situations where the investigation was merely a pretext to punish an inmate for

6   "disappointing" or "accusatory" testimony.  In such a situation the ability to have inmate

7   witnesses testify at odds to the institution personnel would be effectively chilled, if not placed in

8   a deep freeze.  Defendants "may not defeat a retaliation claim on summary judgment simply by

9   articulating a general justification for a neutral process, when there is a genuine issue of material

10  fact as to whether the action was taken in retaliation for the exercise of a constitutional right."

11  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).

12         Moreover, simply because there is a regulation which would support defendants'

13  actions does not completely undercut plaintiff's claim of retaliation in the circumstances or

14  undermine his reliance on another regulation.  In addition, the circumstances which plaintiff sets

15  forth wherein he was placed and kept in Ad Seg immediately after refusing to withdraw any

16  allegation of sexual misconduct by a staffmember and following an investigation which

17  apparently did not validate such allegations, give rise to an inference that the placement could

18  have been retaliatory, notwithstanding defendants' stated rationale for doing so, and, of course,

19  as noted above on defendants' motion for summary judgment, all reasonable inferences that may

20  be drawn from the facts placed before the court must be drawn in favor of the opposing party, in

21  this case, plaintiff.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Thus, a genuine issue of

22  material fact, whether or not the placement in Ad Seg was retaliatory, i.e., was substantially

23  motivated by plaintiff's exercise of protected conduct in the form of testifying regarding a prison

24  staffmember's alleged sexual misconduct and refusal to withdraw such allegations, remains a

25  material fact dispute that must be resolved by a jury at trial.

26  \\\\

1    *Qualified Immunity*

2          In resolving a claim for qualified immunity the court addresses two questions: (1)

3    whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the

4    officers' actions violated a constitutional right and (2) whether a reasonable officer could have

5    believed that his conduct was lawful, in light of clearly established law and the information the

6    officer possessed.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 107 S.Ct. 3034 (1987).  Although the

7    Supreme Court at one time mandated that lower courts consider these two questions in the order

8    just presented, more recently the Supreme Court announced that it is within the lower courts'

9    discretion to address these questions in the order that makes the most sense given the

10   circumstances of the case.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808 (2009).

11         In this case, the undersigned has found, as to the first prong, that taken in the light

12   most favorable to plaintiff, the actions of defendants Herrera and Fry implicate plaintiff's First

13   Amendment constitutional right against retaliation.  As to the second prong, there can be no

14   serious argument that the law regarding retaliation for plaintiff's exercise of protected conduct

15   was not clearly established at the time of defendants Herrera's and Fry's actions.  "The

16   prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit for

17   qualified immunity purposes."  <u>Helm v. Hughes</u>, 2010 WL 597431 * 7 (W.D. Wash. 2010),

18   citing <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) (recognizing "the prohibition

19   against retaliatory punishment as 'clearly established law' for qualified immunity purposes in the

20   Ninth Circuit).  Thus, at the time of the complained-of conduct, no reasonable officer in light of

21   the information in his or her possession could have believed retaliation for plaintiff's allegations

22   against a prison staffmember was lawful conduct.  This court finds defendants Herrera and Fry

23   not to be entitled to qualified immunity, at this time.

24   *Defendant Carey*

25         However, as to any liability on defendant Carey's part, the court agrees with this

26   defendant that plaintiff's showing is insufficient.  MSJ, pp. 6-7.  It is undisputed that plaintiff

1   never spoke to defendant Warden Carey personally about his placement in Ad Seg; that

2   defendant Carey had no personal involvement with the facts of this case, other than possibly

3   receiving a letter from Inmate Morris's brother; that defendant Carey had no involvement in the

4   Morris' RVR hearing and that he would not have been involved in a routine decision to place an

5   inmate in Ad Seg.

6         Defendants sued in their individual capacity must be alleged to have: personally

7   participated in the alleged deprivation of constitutional rights; known of the violations and failed

8   to act to prevent them; or implemented a policy that repudiates constitutional rights and was the

9   moving force behind the alleged violations.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th

10  Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir.

11  1989).  "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v.

12  Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not

13  every injury in which a state official has played some part is actionable under that statute."

14  Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980).  "Without

15  proximate cause, there is no § 1983 liability."  Van Ort v. Estate of Stanewich, 92 F.3d 831, 837

16  (9th Cir. 1996).   The statute requires that there be an actual connection or link between the

17  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

18  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

19  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

20  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

21  omits to perform an act which he is legally required to do that causes the deprivation of which

22  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

23         It is possible that a supervisor can be placed on notice of improper action by

24  subordinate personnel by an aggrieved person, and that inaction on the complaint can be

25  considered a "ratification" of the alleged wrongdoing.  However, ratification is utilized as a

26  theory of liability when an unconstitutional *policy* is established by the *post hoc* ratification of

1  prior actions.  In other words, the ratification has to have something to do with the cause of the

2  incident in the first place.  The ratification simply makes clear that the policy was in effect at the

3  time of the incident and was the "moving force" for the unconstitutional act.  See Starr v. Baca,

4  633 F.3d 1191 (9th Cir. 2011) (discussing a systematic inaction in the face of alleged

5  unconstitutional actions on the part of subordinates).  However, this theory cannot be so stretched

6  to a situation where, as here, no policy is at issue, but simply a one-time event that had been

7  completed at the time the complaint was made.  It cannot be that a busy prison warden must, at

8  the risk of §1983 litigation, be distracted into launching a full fledged investigation every time an

9  inmate raises an after-the-fact personal complaint about perceived unfairness in the prison

10  disciplinary system.  The allegations against Warden Cary clearly fall within the permissible

11  inaction situation.

12         In addition, as to any prospective injunctive relief sought from defendant Carey in

13  an official capacity, it is undisputed that he is retired.  Moreover, plaintiff has been transferred

14  from CSP-Sol and is no longer in Ad Seg, and it is undisputed that plaintiff does not seek a

15  further transfer as a form of injunctive relief in this matter.  MSJ, p. 7.  When an inmate seeks

16  injunctive relief concerning an institution at which he is no longer incarcerated, his claims for

17  such relief become moot.  See  Sample v. Borg, 870 F.2d 563 (9th Cir. 1989); Darring v.

18  Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986).  See also Reimers v. Oregon, 863 F.2d 630, 632

19  (9th Cir. 1988).  In addition, as a retired warden, this defendant could afford plaintiff no form of

20  injunctive relief.  Defendant Carey's motion for summary judgment in an official capacity should

21  be granted as well.

22         *Conclusion*

23         Because the court has found that plaintiff has not sustained his allegation of a

24  violation of his First Amendment rights by defendant Carey, he should be granted summary

25  judgment but as to defendants Herrera and Fry, this matter should proceed to trial.

26  \\\\

1          Accordingly, IT IS HEREBY RECOMMENDED that  defendants' motion for

2    summary judgment, filed on November 2, 2010 (docket # 38), be granted as to defendant Carey

3    and denied as to defendants Herrera and Fry.

4          These findings and recommendations are submitted to the United States District

5    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

6    days after being served with these findings and recommendations, any party may file written

7    objections with the court and serve a copy on all parties.  Such a document should be captioned

8    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9    shall be served and filed within fourteen days after service of the objections.  The parties are

10   advised that failure to file objections within the specified time may waive the right to appeal the

11   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12   DATED: 06/06/2011

13                       /s/ Gregory G. Hollows

14                       GREGORY G. HOLLOWS
                    UNITED STATES MAGISTRATE JUDGE

15   GGH:009
    lanc0051.msj

16

17

18

19

20

21

22

23

24

25

26